IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CLINICAL COLLEAGUES, INC.,

     Plaintiff,

v.                                  Case No. 20-2297-JWB

HUTCHINSON REGIONAL MEDICAL
CENTER, INC., et al.,

     Defendants.


**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' motion for judgment on the pleadings (Doc. 12), motion to dismiss (Doc. 17), and Plaintiff's motion to certify questions (Doc. 20). The motions have been fully briefed and are ripe for decision. (Docs. 13, 18, 19, 21, 23, 24, 25, 26, 28.) For the reasons set forth herein, Defendants' motions are GRANTED, and Plaintiff's motion is DENIED.

## I.    Background

The following factual allegations are taken from Plaintiff Clinical Colleagues, Inc.'s ("CCI") Complaint. (Doc. 1.) CCI is a Texas general corporation whose principal place of business is in Florida. Defendant Hutchinson Regional Medical Center, Inc. ("HRMC") owns and operates a hospital in Hutchinson, Kansas. HRMC is contractually obligated to provide anesthesia services to a local surgical center owned by another entity. In order to meet staffing requirements, HRMC entered into an anesthesia services agreement ("the Agreement") with CCI on March 1, 2008. (*Id.* at ¶ 11.)

The Agreement required CCI to provide professional anesthesia services at both HRMC and the surgical center.  In turn, CCI entered into anesthesia services agreements ("Provider Agreements") with various providers who employed the anesthesiologists and certified registered nurse anesthetists needed to render anesthesia services.  In September 2015, Defendant Wheatstate Anesthesia, P.A., a Kansas professional association owned and operated by Defendant Brian Fleeman, entered into a provider agreement with CCI.  (*Id*. at ¶ 15.)  In recognition of CCI expending substantial resources to find and retain the providers and practitioners, the Agreement contained both a termination and non-solicitation provision.  These provisions required HRMC to pay significant compensation to CCI for each practitioner that continued to work at the hospital and/or surgical center after termination of the Agreement.  (*Id*. at ¶ 26-27.)

On July 26, 2018, HRMC terminated the Agreement with CCI shortly before it was set to expire, citing CCI's alleged violation of the Kansas corporate practice of medicine doctrine, which "forbids a corporation from contracting with a physician to practice medicine that the corporation itself is not licensed to perform."  *Cent. Kan. Med. Ctr. v. Hatesohl*, 308 Kan. 992, 1001, 425 P.3d 1253, 1260 (2018).  In need of a replacement, HRMC entered into an agreement with Brian Fleeman's newly formed professional limited liability company, Salt City Anesthesia[1], to provide the same anesthesia services that CCI previously provided.  (*Id*. at ¶ 21.)  At the time of termination, CCI had 13 practitioners under contract to provide services at the hospital and surgical center.  CCI alleges "all but one" of these practitioners continued to render anesthesia services to the hospital and surgical center following the termination of the Agreement.  (*Id*. at ¶ 23.)  HRMC refused to compensate CCI for any of the practitioners it retained.

---

[1] Defendants Brian Fleeman, Wheatstate Anesthesia, P.A., and Salt City Anesthesia, LLC will be referred to herein collectively as "Fleeman."

On June 17, 2020, CCI filed the present suit.  The Complaint alleges four claims against HRMC: breach of contract, breach of the duty of good faith and fair dealing, tortious interference with a contract, and tortious interference with a prospective business relationship.  With respect to Fleeman, the Complaint alleges two claims for tortious interference with a contract and two claims for tortious interference with a prospective business relationship.  Defendants filed separate motions for dismissal, but largely argue the same point—that the claims against them are precluded by the Kansas corporate practice of medicine doctrine.  In response, CCI argues the corporate practice of medicine doctrine violates the equal protection clauses of both the United States Constitution and Section 1 of the Kansas Bill of Rights.  (Doc. 19 at 5.)  Additionally, CCI "seeks to certify questions [to the Kansas Supreme Court] surrounding the viability of the judicially created corporate practice of medicine doctrine."  (Doc. 20 at 3.)

## II.    Jurisdiction

According to the Complaint, CCI is a Texas corporation whose principal place of business is in Florida.  *See Newsome v. Gallacher*, 722 F.3d 1257, 1267 (10th Cir. 2013.)  Defendants are residents of Kansas and the amount in controversy exceeds $75,000, such that the court has diversity jurisdiction over the dispute pursuant to 28 U.S.C. § 1332.  (Doc. 1 at 1-2.)  In a diversity action, this court applies the choice of law rules in the forum state, which in this case is Kansas.  *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 123 F.3d 1351, 1352-53 (10th Cir. 1997).  Defendants assert that Kansas law applies, which CCI does not contest.  (*See generally* Docs. 13, 19.)  The court agrees and will apply Kansas law to the state-law claims at issue.

## III.   Standard

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)."  *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160

(10th Cir. 2000).  The court will grant a 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008).  The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id.*  "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court construes any reasonable inferences from these facts in favor of the plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

## IV.   Analysis

As a threshold matter, CCI seeks to certify two questions to the Kansas Supreme Court: (1) whether the corporate practice of medicine doctrine violates Section 1 (equal protection provision) of the Kansas Constitution's Bill of Rights; and (2) whether the corporate practice of medicine doctrine violates Kansas public policy.  (Doc. 20 at 1.)  Defendants respond that certification is unnecessary because Kansas courts have routinely upheld and applied the doctrine.  (Doc. 24 at 1; Doc. 25 at 1.)  As explained below, the court agrees with Defendants that Kansas case law provides sufficient guidance to resolve the proposed questions.  Following that discussion, the court takes up the constitutionality of the corporate practice of medicine doctrine—which all parties agree is outcome determinative.  After finding the corporate practice of medicine doctrine passes constitutional muster, the court dismisses CCI's claims in their entirety.

### A.   Certification is Not Necessary

The decision whether to certify a question of state law "rests in the sound discretion of the federal court." *Lehman Brothers v. Schein*, 416 U.S. 386, 391 (1974).  Under Kansas law, the Kansas Supreme Court may answer certified questions that are "determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state." K.S.A. § 60-3201.  In this circuit, courts will not certify every "arguably unsettled question of state law [that] comes across our desks." *Pino v. United States*, 507 F.3d 1233, 12356 (10th Cir. 2007). Rather, if there is a "reasonably clear and principled course" available to follow, the court will do so. *Id*.  However, certification is appropriate if the question: "(1) may be determinative of the case at hand and (2) is sufficiently novel that [the court] feel[s] uncomfortable attempting to decide it without further guidance." *Id*.

The parties agree that this issue would be determinative.  Now, the issue is whether these questions are unsettled.  CCI, citing to the concurrence from *Hatesohl*, argues Kansas precedent on the issue is insufficient for this court to resolve the state-law questions presented.  In his concurrence, Justice Stegall explained why, from his viewpoint, the corporate practice of medicine doctrine is legally unsound.  *See generally Hatesohl*, 425 P.3d at 1268-1273.  Notably, however, Justice Stegall's concurrence was not joined by any other member of the court.  Defendants argue the law is settled because for nearly 100 years the Kansas Supreme Court has repeatedly applied the corporate practice of medicine doctrine in upholding "the default rule that an unlicensed corporation cannot practice medicine through licensed practitioners." *Hatesohl*, 425 P.3d at 1262.

Contrary to CCI's argument, a concurring opinion does not render the law "unsettled." Rather, Kansas law appears quite settled on the doctrine's application and viability.  Indeed, just three years ago the majority in *Hatesohl* declined to question the doctrine's constitutional validity

5

sua sponte, citing reliance on nearly 100 years of stare decisis.  *Id*. at 1263.  Turning to CCI's second proposed question, the court finds no basis suggesting that Kansas public policy regarding the doctrine is questionable.  Again, as recently as three years ago the Kansas Supreme Court affirmed that the corporate practice of medicine doctrine properly reflected the public policy of Kansas.  *Id*. at 1268.  The court is comfortable answering the state-law questions without further guidance from the state courts.

Moreover, the analysis under the Fourteenth Amendment of the United States Constitution and Section 1 of the Kansas Bill of Rights is more or less the same.  *See Ferguson v. Garmon*, 643 F.Supp. 335, 341 (D. Kan. 1986) ("Generally, the Kansas courts appear to construe the Kansas Constitution's equal protection provision as being substantially the equivalent of the fourteenth amendment."); *State v. Limon*, 280 Kan. 275, 122 P.3d 22, 38 (2005) (noting that Kansas courts "traditionally apply the same [equal protection clause] analysis to [the Kansas] state constitution" as the Fourteenth Amendment).  This similarity is sufficient to provide a reasonably clear and principled course to follow.

Ultimately, the problem here is that CCI came to the wrong court.  Knowing that Kansas' corporate practice of medicine doctrine was an issue in this case, CCI nevertheless elected to file its lawsuit in federal court.  (Doc. 1.)  Although CCI might have preserved its argument for a change in the law in the lower state courts and then squarely presented the issue to the Kansas Supreme Court on appeal, the road to the Kansas Supreme Court is much narrower in the federal system.  Certification is generally limited to unsettled issues of state law that may be determinative of the case.  Here, the law establishing the corporate practice of medicine doctrine may have been improvidently adopted, or it may have outlived its usefulness, all as suggested by Justice Steagall's well-written and persuasive concurrence, but it is most definitely not unsettled.  Had it been so,

Justice Steagall would have written a dissent, not a concurrence; but even Justice Steagall recognized that the outcome in *Hatesohl* was compelled by the current state of the relevant law. Accordingly, CCI's motion for certification is denied.

### B.      The Corporate Practice of Medicine Doctrine is Constitutional

To begin, the Kansas Supreme Court recently mapped out the corporate practice of medicine doctrine's extensive history in *Hatesohl*.  *See Hatesohl*, 425 P.3d at 1260-63.  For the court's present purpose, however, an abbreviated explanation suffices:

> In Kansas, the practice of medicine requires a license. An examination must be taken in order to obtain a license. Because only individuals can take examinations, only individuals can be licensed to practice medicine. The *Zale*, *Goldman*, and *Winslow* cases, decided in 1956, 1935, 1924, respectively, equated a corporation's employing a licensed professional individual who practiced dentistry or optometry with a corporation's practicing that profession. When the legislature subsequently enacted the Healing Arts Act, the Professional Corporation Law, and the General Corporation Code [K.S.A. 2017 Supp. 17-6001 et seq.], it had the opportunity to include provisions which would have changed the judicial interpretation, but it did not do so. Thus, the rule that a general corporation is prohibited from providing medical services or acting through licensed practitioners still applies.

*Id*. at 1261-62 (quoting *St. Francis Reg. Med. Ctr., Inc. v. Weiss*, 254 Kan. 728, 869 P.2d 606, 611 (1994)).  Importantly, "there is no right to practice medicine which is not subordinate to the police power of the states."  *Lambert v. Yellowley*, 272 U.S. 581, 596 (1926).

CCI argues "the corporate practice of medicine doctrine could be found unconstitutional under either the federal or state constitution" because there is no legitimate government purpose[2] for the doctrine in today's world.  (Doc. 19 at 8.)  Specifically, CCI maintains the doctrine acts to protect professionally licensed corporations and associations at the expense of all other business entities, thereby violating the Equal Protection clause of the Fourteenth Amendment to the United

---

[2] CCI offers five different reasons why the doctrine is unconstitutional.  (Doc. 19 at 10.)  However, as Defendant Fleeman points out, "[e]ach of these arguments fails, as they are based on a standard that is much more demanding than rational basis."  (Doc. 26 at 2.)  The court agrees and will apply the standard rational basis review.

States Constitution and its state counterpart in Section 1 of the Kansas Constitution Bill of Rights. (*Id*. at 4, 11.)  Defendants reply that the doctrine passes the very lenient rational basis test because it furthers Kansas' interest in the health of its citizenry.  (Doc. 26 at 5.)  In support, Fleeman asserts "there is not a single case striking down a state's corporate practice doctrine on constitutional grounds."  (Doc. 26 at 2.)  After reviewing the pertinent case law, the court determines Kansas' corporate practice of medicine doctrine passes rational basis review.

Because the corporate practice of medicine doctrine "does not implicate a fundamental right or affect a suspect classification[,]" rational basis review applies.  *In re Stewart*, 175 F.3d 796, 812 (10th Cir. 1999).  To pass this standard, "the [corporate practice of medicine doctrine] need only be rationally related to a legitimate government purpose."[3]  *Save Palisade Fruitlands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002).  "A statute is presumed constitutional . . . and '[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.'"  *Heller v. Doe*, 509 U.S. 312, 320 (1993); *see also Peden v. State*, 261 Kan. 239, 930 P.2d 1, 9 (1996) (employing the same standard).

A leading case in this circuit on the constitutionality of intrastate licensing schemes is *Powers v. Harris*.  379 F.3d 1208 (10th Cir. 2004).  The parties strongly dispute the effect of *Powers* on this case, (Docs. 19 at 15-17; 23 at 8-9; 26 at 6-7), but the court finds itself bound by *Powers* with respect to CCI's federal equal protection challenge to the corporate practice of medicine doctrine.  In *Powers*, certain Oklahoma casket sellers challenged a state law prohibiting them from conducting intrastate sales of caskets under certain conditions without obtaining a state

---

[3] As noted above, Kansas courts apply the same equal protection analysis to the state and federal constitutions.  *See Limon*, 122 P.3d at 38.  CCI tries to muddy the waters by arguing the doctrine may meet the rational basis standard under the federal constitution, but still fail under Kansas' constitution.  (Doc. 19 at 9.)  To support this proposition, CCI cites to one abortion case.  *See Hodes & Nauser v. Schmidt*, 309 Kan. 610, 440 P.3d 461 (2019).  However, *Hodes* dealt with defining fundamental rights, which CCI does not attempt to argue is the case here.

funeral director's license. *Powers* 379 F.3d at 1211-14. In rejecting the plaintiffs' equal protection and due process challenges to the state licensing scheme, the Tenth Circuit stated emphatically that "absent a violation of a specific constitutional provision or other federal law, intrastate economic protectionism constitutes a legitimate state interest." *Id.* at 1221.

In so holding, the Tenth Circuit cast a dismissive glance at the Sixth Circuit's contrary ruling in *Craigmiles v. Giles*, 312 F.3d 220, 228 (6th Cir.2002). There, the Sixth Circuit observed that "protecting a discrete interest group from economic competition is not a legitimate governmental purpose." *Id.* at 224. *Powers* strongly condemned the analysis in *Craigmiles*, essentially reducing that case to an aberration. *See generally Powers*, 379 F.3d at 1218-22. Alas, time has not been so kind to *Powers*. While the Second Circuit adopted its analysis, *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 286 (2d Cir. 2015), *Powers* has been panned by the Fifth and Ninth Circuits for its wholesale conclusion that intrastate economic protectionism is itself a legitimate state interest. *St. Joseph Abbey v. Castille*, 712 F.3d 215, 222–23 (5th Cir. 2013); *Merrifield v. Lockyer*, 547 F.3d 978, 991 n.15 (9th Cir. 2008). While it ultimately remains to be seen whether *Craigmiles* or *Powers* will become the aberration, that issue is of no moment in the instant case. Although the reasoning and analysis in *Craigmiles* and *St. Joseph Abbey* is more persuasive, *Powers* is controlling in this circuit, and it teaches that the courts have almost no role in assessing the legitimacy of intrastate economic protectionist laws under general constitutional provisions like the Equal Protection clause of the Fourteenth Amendment. *Powers*, 379 F.3d at 1221-23 (holding intrastate economic protectionism is a legitimate state interest and that an Oklahoma casket sales law was "very well tailored to protecting the intrastate funeral-home industry." (Internal quotations omitted)). Under *Powers*, intrastate economic protectionism is itself a legitimate state interest, and laws that protect the rent-seeking professions from unlicensed

competition are by definition rationally related to that goal.  *See id.*  Justice Stegall characterized

Kansas' corporate practice of medicine doctrine as the result of "naked rent-seeking."  *Hatesohl*,

425 P.3d at 1271 (Stegall, J., concurring).  Under *Powers*, that's just fine.

Applying *Powers*, it is clear that even if CCI is correct that Kansas' corporate practice of

medicine doctrine has no other legitimate purpose beyond the protection of doctors and doctor-run

professional corporations from competition by unlicensed laymen operating through general

corporations as it pertains to the intrastate practice of medicine, that amounts to a legitimate state

interest, and the doctrine is "very well tailored" to achieving that interest.  *Powers*, 379 F.3d at

1223.

To the extent there is any question as to whether *Powers* applies to other professional

licensing matters like those at issue in this case, the court notes that *Powers* rejected the invitation

to "adopt[] a rule against the legitimacy of intrastate economic protectionism," finding that it

would not only pose a "threat to all licensed professions such as *doctors*, teachers, accountants,

plumbers, electricians, and lawyers, *see*, *e.g.*, Oklahoma Statutes, title 59 (listing over fifty licensed

professions)," but would also threaten "every piece of legislation in six states aiming to protect or

favor one industry or business over another in the hopes of luring jobs to that state . . ."  *Powers*,

379 F.3d at 1222 (emphasis added).  Thus, the Tenth Circuit explicitly confirmed that its holding

in *Powers* would extend to professional licensing schemes like those at issue in this case.

CCI further contends that *Powers* is inapposite because Kansas' law affects interstate

commerce.  (Doc. 19 at 15, 16.)  CCI does not cast this as a separate challenge under the Commerce

Clause, but rather as a way to distinguish *Powers*, which focused on intrastate economic

protectionism.  However, CCI presents little in the way of support or elaboration on this point

other than to assert that "the healthcare market operates within the stream of interstate commerce."

(*Id.* at 15.)  Indeed, so does the casket market, but that was no impediment in *Powers*.  Suffice it to say that there is nothing about Kansas' corporate practice of medicine doctrine that discriminates against foreign corporations – the rule applies even-handedly to any general corporation with respect to practicing medicine within the state of Kansas.  Moreover, even if *Powers* were somehow distinguishable, this court would still be bound by a separate decision from the Supreme Court.

In *Garcia v. Texas State Bd. of Med. Exam'rs*, a three-judge panel of the district court found a Texas law prohibiting the corporate practice of medicine did not violate the Equal Protection Clause of the Fourteenth Amendment.  384 F. Supp. 434 (W.D. Tex. 1974) (per curiam); *see also* 492 F.2d 131 (5th Cir. 1974) (vacating original judgment and ordering that the case be heard by a three-judge court).  The decision of the three-judge court was summarily affirmed by the Supreme Court.  421 U.S. 995 (1975).  While the Supreme Court did not render an opinion, the fact that it affirmed a decision on essentially the same issues presented here is highly persuasive, if not entirely controlling.  *See Mandel v. Bradley*, 432 U.S. 173, 176 (1977) (holding summary affirmances "leave undisturbed the judgment appealed from.").

Finally, circling back to CCI's contention that the corporate practice of medicine doctrine violates Section 1 of the Kansas Bill of Rights, the court has already explained that Kansas applies the same equal protection analysis as its federal counterpart.  See *Limon*, 122 P.3d at 38.  Thus, it follows that the doctrine also passes state constitutional muster.  Accordingly, the Kansas corporate practice of medicine doctrine must be upheld under both federal and state constitutional grounds.

### C.    The Corporate Practice of Medicine Precludes CCI's Claims

After upholding the corporate practice of medicine doctrine, the court finds that each of the contracts on which CCI bases its claims are illegal and unenforceable.  The law is simple: Kansas

"forbids a [general] corporation from contracting with a physician to practice medicine that the corporation itself is not licensed to perform. Any contract in contravention of this doctrine is unenforceable." *Hatesohl*, 425 P.3d at 1260. Indeed, "[w]here the parties enter into an agreement that cannot be enforced, the courts will not aid either party to the prohibited contract and will ordinarily leave the parties where it finds them." *Early Detection Ctr., Inc. v. Wilson*, 248 Kan. 869, 811 P.2d 860, 868 (1991). Although "it may not always seem an honorable thing to do, a party to an illegal agreement is permitted to set up the illegality as a defense even though the party may be alleging his or her own turpitude." *Id*. at 867.

Here, CCI, a general corporation, violated the corporate practice of medicine doctrine by agreeing to provide anesthesia services that the corporation was not licensed to perform. Every claim CCI alleges against the Defendants requires an enforceable contract, which it does not have.[4] This forecloses any hope of recovery by CCI. Accordingly, CCI's Complaint is dismissed in its entirety.[5]

## V.     Conclusion

Fleeman's motion for judgment on the pleadings (Doc. 12) and HRMC's motion to dismiss (Doc. 17) are GRANTED. CCI's certification motion (Doc. 20) is DENIED.

IT IS SO ORDERED this 24th day of September, 2021.


 _s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE

---

[4] *See Early Detection Ctr*., 811 P.2d at 868 (dismissing plaintiff's contract and tortious interference claims); *Bonanza, Inc. v. McLean*, 242 Kan. 209, 747 P.2d 792, 222 (1987) (explaining the duty of good faith and fair dealing is implied in every contract).

[5] In the alternative, CCI requests leave to amend the Complaint to assert equitable claims against the Defendants. (Doc. 19 at 24.) However, "it is well settled both in law and in equity that the courts will not aid either party to an illegal agreement." *Early Detection Ctr*., 811 P.2d at 868. Thus, the court will leave the parties where it found them.